UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASSOCIATION OF FLIGHT
ATTENDANTS– CWA, AFL-CIO,

        Plaintiff,

v.

                                      Civil Case No. 2:12-CV-15641
                                      Honorable Patrick J. Duggan

SPIRIT AIRLINES, INC.,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

The Association of Flight Attendants–CWA, AFL-CIO ("AFA" or "Union") initiated this action on December 26, 2012, seeking relief under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.* Presently before the Court is Defendant Spirit Airlines, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or (6), filed January 23, 2103. The motion has been fully briefed. The Court held a motion hearing on April 25, 2013, and now grants Defendant's motion.

**Factual and Procedural Background**

AFA is a labor organization representing the flight attendants employed by Sprit Airlines, Inc. ("Spirit"). (Compl. ¶ 1.) Spirit is a common carrier engaged in interstate commerce. (*Id*. ¶ 2.) AFA and Spirit are parties to a collective bargaining agreement ("CBA") which became effective February 7, 2003 and renews itself annually without change. (*Id*. ¶ 6.)

Section 22 of the CBA governs the filing and processing of grievances under the agreement. (*Id.* ¶ 7, citing Ex. A.) Pursuant to Section 22, the process culminates in final and binding arbitration of unresolved grievances before a board of adjustment known as the Sprit Airlines, Inc. Flight Attendant System Board of Adjustment ("System Board"). (*Id.* Ex. A § 22.) The CBA provides that the System Board "shall consist of three (3) Board Members: a Union representative, a Company representative, and an arbitrator." (*Id.* § 22.F.3.a.) The CBA further provides that the Union and Company representatives must be full-time Spirit employees. (*Id.*) Arbitrators are selected from a panel of five individuals agreed to by the parties. (*Id.* § 22.F.3.d.)

On January 28, 2011, AFA filed a grievance regarding domestic partner health benefits, grievance number 39-99-02-01-11. (Compl. ¶ 16.) The grievance proceeded to arbitration before the System Board on July 26, 2012. (*Id.*) The System Board Members at the time were Union representative Carmen Linn, Company representative Costin Corneanu, and Arbitrator Susan Brown. (*Id.* ¶¶ 12, 13, 17.) It was noted at the hearing that Linn intended to retire from Spirit possibly in September 2012. (*Id.* ¶ 18.) In anticipation of her retirement, the Union had appointed Ramona Rios, another full-time employee, to serve as Linn's replacement upon her retirement. (*Id.* ¶ 19.) Rios attended the arbitration and was introduced as Linn's successor. (*Id.* ¶ 20.)

The System Board did not convene or consult after the July 26, 2012 hearing. (*Id.* ¶ 21.) Pursuant to the CBA, the System Board must render a decision within thirty (30) days after the close of the grievance hearing and/or submission of briefs. (*Id.* Ex. A

2

§ 22.F.4.a.) The CBA further provides that decisions of the System Board "shall be by a majority vote and shall be final and binding on all parties." (*Id.* § 22.F.4.a.)

Linn retired effective September 1, 2012. (*Id.* ¶ 22.) On September 26, 2012, Arbitrator Brown circulated a "draft" opinion and award in favor of the Union. (*Id.* ¶¶ 14, 25.) Arbitrator Brown's usual practice on the System Board was to draft the opinion and award and share it with the other members prior to an "executive session" where the case would be discussed among the members. (*Id.* ¶ 14.)

According to AFA, party System Board members (i.e., the Union member and Company member), "in all previous cases . . . signed decisions in favor of their own party and dissented in decisions favoring the opposing party." (*Id.* ¶ 10.) In conformance with this practice, Corneanu, as the Company representative, will not sign to affirm Arbitrator Brown's draft decision. (*Id.* ¶ 28.) AFA proposes to have Linn or Rios sign on behalf of the Union. Spirit objects to Linn because only full-time employees are eligible System Board members and she now is retired. (*Id.* ¶ 31; *see also* Ex. A ¶ 22.F.3.a.) Spirit also objects to Rios because she was not designated as the System Board member at the hearing itself. (*Id.* ¶ 33.) Spirit maintains that only three options are available at this juncture: (1) proceed with the existing board of Arbitrator Brown and Corneanu and hope to reach a majority decision or a deadlock which results in the effective denial of the grievance; (2) start anew by appointing a new arbitrator (as Brown no longer is on the list of agreed-to neutral arbitrators) and rehear the grievance; or, (3) withdraw the grievance. (*Id.* ¶ 36.) AFA has proposed as an alternative that the grievance be heard *de novo* by a

3

new System Board chaired by Arbitrator Brown. (*Id.* ¶ 38.) Spirit rejected this proposal. To resolve this impasse, AFA filed this lawsuit.

In its Complaint, AFA alleges that by refusing to recognize Linn or Rios, "Spirit is seeking to circumvent the finalization and enforcement of an Opinion and Award that is favorable to AFA." (*Id.* ¶ 41.) AFA maintains that this constitutes a violation of Section 204 of the RLA, 45 U.S.C. §§ 153 and 184. (*Id.* ¶ 43.) AFA asks the Court to *inter alia* issue an order requiring Spirit to either: (a) recognize Linn as a member of the System Board for the purpose of completing the arbitration of the grievance or (b) recognize Rios as a substitute member for that purpose. Alternatively, AFA asks the Court to compel Spirit to resubmit the grievance for *de novo* hearing before a System Board chaired by Arbitrator Brown.

Spirit responded to AFA's Complaint by filing the present motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or (6). Spirit argues that dismissal is appropriate under Rule 12(b)(1) because this Court lacks subject matter jurisdiction to decide the "minor dispute" raised by AFA's Complaint. Alternatively, but for the same reason, Spirit contends that AFA fails to state a claim on which relief may be granted and thus dismissal under Rule 12(b)(6) is appropriate.

## Applicable Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66).

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a facial attack is asserted, all of the allegations in the complaint must be taken as true, as with a Rule 12(b)(6) motion. *Id.* Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

In support of its claim that this Court lacks subject matter jurisdiction, Spirit offers evidence outside AFA's Complaint. However, the Court finds it unnecessary to consider that evidence to decide Spirit's motion under Rule 12(b)(1). Thus it is treating Spirit's challenge as a facial attack and, as the Court will do in evaluating Spirit's alternative argument for dismissal under Rule 12(b)(6), will consider only the facts alleged by AFA in its pleading.

## Applicable Law and Analysis

AFA invoked the jurisdiction of this federal court pursuant to 28 U.S.C. § 1331,

because its claims "arise under" the RLA.  The RLA establishes mandatory methods for resolving disputes between employers subject to the act and their employees "to promote peaceful and efficient resolution of those disputes."  *Union Pacific R.R. Co. v. Bhd. of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U.S. 67, –, 130 S. Ct. 584, 591 (2009) (citation omitted).  Which method is applicable depends on which of two types of disputes are at issue: "major disputes" or "minor disputes."

Major disputes " 'relate[] to disputes over the formation of collective agreements or efforts to secure them.  They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy.' "  *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S. Ct. 2477, 2480 (1989) (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S. Ct. 1282, 1289-90 (1945)).  The RLA requires bargaining and mediation in the event of a major dispute.  *Id*.; *see also* 45 U.S.C. § 183.  A "minor dispute," in comparison,

> "contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one.  The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case."

*Consol. Rail Corp.*, 491 U.S. at 303, 109 S. Ct. at 2480 (quoting *Burley*, 325 U.S. at 723, 65 S. Ct. at 1289-90.)  The RLA requires minor disputes to be handled through conference and compulsory arbitration pursuant to the framework set forth in the statute.  *See* 45 U.S.C. § 184.

7

When Congress extended the RLA to the air transportation industry, it specifically excepted section 153. *See* 45 U.S.C. § 181 ("All of the provisions of subchapter I of this chapter except section 153 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce . . ."). The Supreme Court has held, however, that Congress still intended to extend much of the statutory scheme in § 153 to arbitration between air carriers and their employees. *See Int'l Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc.*, 372 U.S. 682, 83 S. Ct. 956 (1963). Pursuant to these procedures, disputes between air carriers and their employees not resolved through the grievance process must be submitted to a Board of Adjustment. *Id*.

The Board of Adjustment may be established by agreement between the carrier and its employees. 45 U.S.C. § 184. As indicated in the factual background section, in their CBA, Spirit and AFA established a System Board comprised of a Union representative, Company representative, and neutral selected from an approved list. In accordance with the RLA, 45 U.S.C. §§ 153 First (m), (n), the CBA further provides that decisions of the System Board shall be by a majority vote and are final and binding on the parties.

The federal courts have jurisdiction to enforce and review awards issued by a Board of Adjustment or System Board. *See, e.g., Int'l Bros. of Teamsters v. Amerijet Int'l, Inc.*, 755 F. Supp. 2d 1243, 1254 (S.D. Fla. 2010) (citing *Central Airlines, Inc.*, 372 U.S. 682, 83 S. Ct. 956); *see also* 45 U.S.C. § 153 First (p). However, "arbitration awards arising from minor disputes are reviewable by a district court on narrow grounds."

*Cont'l Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391 F.3d 613, 617 (5th Cir. 2004). As set forth in the RLA, review is limited to whether: (1) the System Board complied with the statute, (2) conformed or confined itself to matters within its jurisdiction, or (3) a member of the Board engaged in fraud or corruption. 45 U.S.C. § 153 First (q); *see also Amerijet Int'l, Inc.*, 755 F. Supp.2d at 1254 (citing *Parsons v. Cont'l Airlines, Inc.*, 215 F. App'x 799, 801 (11th Cir. 2007)); *Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.3d 257, 261 (6th Cir. 1984) (citing *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S. Ct. 399, 402 (1978)). The RLA further grants the federal district courts jurisdiction over lawsuits brought by employees to enforce a System Board award issued in their favor. *See* 45 U.S.C. § 153 First (p); *see also Union Pacific R.R.*, 130 S. Ct. at 592 (recognizing that Congress provided "that an employee who obtained a monetary award against a carrier could sue to enforce it, and the court could either enforce the award or set it aside.").

While final awards may be subject to review in the federal courts, the RLA has " 'foreclosed litigation' over minor disputes." *Id.* (citing *Union Pacific R.R. Co. v. Price*, 360 U.S. 601, 616, 79 S. Ct. 1351, 1359 (1959)). As the Sixth Circuit has explained, the courts lack subject matter jurisdiction over a lawsuit raising a minor dispute that is brought before the RLA-mandated arbitral process is completed. *See, e.g., Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 788 (6th Cir. 2012) (citing *Kaschak v. Consol. Rail Corp.*, 707 F.2d 902, 905 (6th Cir. 1983) (citing *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S. Ct. 1562 (1972))). In such a case, the Sixth Circuit has advised that "'. . . a motion to dismiss pursuant to Rule 12(b)(1) must be sustained.'" *Id.* (quoting

9


*Kaschak*, 707 F.2d at 905) (additional citation omitted). Subsequently in *Emswiler*, however, the Sixth Circuit held that this approach needed to be modified following the Supreme Court's decision in *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 126 S. Ct. 1235 (2006). *Emswiler*, 707 F.3d at 788-91.

The *Emswiler* court held that "in the aftermath of *Arbaugh*, completion of the RLA-mandated arbitral process does not affect a district court's subject matter jurisdiction over a claim but instead goes to the court's ability to reach the merits of a dispute and grant relief . . .." *Id*. at 790 (internal quotation marks and citation omitted). The Sixth Circuit explained:

> While the RLA clearly precludes the federal courts from granting relief on minor disputes that have not first been brought through the RLA arbitral process, such disputes still raise a question "arising under" federal law, i.e. the RLA. *See* 45 U.S.C. § 153 First (i), (p), (q); 28 U.S.C. § 1331. So, it is "less than meticulous" to say that failure to arbitrate under the RLA deprives the courts of subject matter jurisdiction. *See Arbaugh*, 546 U.S. at 511, 126 S. Ct. 1235. Rather, the failure to arbitrate impacts the plaintiff's " 'ability to prove the defendant bound by the federal law asserted as the predicate for relief– a merits-related determination.' " Arbaugh, 546 U.S. at 511, 126 S. Ct. 1235 (quoting 2 J. Moore et al., Moore's Federal Practice § 12.30[1], p. 12–36.1 (3d ed. 2005)).

*Emswiler*, 691 F.3d a 789.

Here, in its Complaint, AFA asks the Court to enforce the "award" as drafted by Arbitrator Brown. AFA views the decision as final and subject to federal court review because (1) it is in favor of the union and (2) System Board representatives always rule in favor of the party they represent and thus whoever serves in that position would join Arbitrator Brown to create a majority. Thus the first question for this Court is whether

10

Arbitrator Brown's opinion is a valid "final and binding" arbitration award.

Pursuant to the RLA and the parties' CBA, a majority vote is required to render a valid decision. According to the CBA, Linn became ineligible to serve as a System Board member once she ceased being a full-time Spirit employee. While the Court might be able to presume based on the allegations in AFA's Complaint that Linn would have joined Arbitrator Brown to create a majority, the fact remains that she did not do so before she became ineligible to serve on the System Board. *See* 45 U.S.C. § 153 First (n) ("A majority vote of all members . . . *eligible to vote* shall be competent to make an award with respect to any dispute submitted to it.") (emphasis added). Moreover, Linn's ineligibility occurred before the board members consulted concerning Arbitrator Brown's draft decision, which the Sixth Circuit has recognized to be a minimum procedural requirement under the RLA. *Jones*, 728 F.2d at 263-64 (holding that "in order to have a valid award, a majority of the Board must hear the parties *and* participate in the decisionmaking process before rendering an award" and that "it is improper for the chairmen to render a decision against either party without first consulting with the other designated arbitrators.") (emphasis added).

The fact that Arbitrator Brown's decision is not now final and binding does not mean that it may not become so. In other words, re-arbitration may not necessarily be required.[1] AFA may be correct that Rios can step into Linn's shoes or that some other

---

[1] In *Marine Products Export Corp. v. M.T. Globe Galaxy*, 977 F.2d 66 (2nd Cir. 1992), the court set forth the "general rule" that "'where one member of a three-person

substitution is permissible. However, the determination of how to proceed under the circumstances is not properly before the Court at this juncture.[2] As AFA's Complaint suggests (*see* Compl. ¶¶ 31, 34), the dispute between the parties on how to proceed arises from their distinct interpretations of the CBA. Whether the CBA contains terms applicable to the situation or omits a relevant provision, the dispute constitutes a "minor" one. *See Burley*, 325 U.S. at 723, 65 S. Ct. at 1289-90 (explaining that a "minor dispute" is one that "relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case"). As set forth earlier, minor disputes must first be resolved through the mandatory procedures set forth in the RLA.

---

arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel.'" *Id* at 68 (quoting *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191 (2d Cir.1991)). This Court does not believe that it has authority to determine whether the general rule should apply in this RLA case. Moreover, the Court does not believe that it may decide in the first instance whether parties' agreement anticipates the circumstances presented (i.e. a board member retiring mid-arbitration).

[2]This includes the determination of whether a *de novo* arbitration– if required– must proceed with Arbitrator Brown or some other neutral member.

## Conclusion

In short, due to Linn's inability to continue serving as a System Board member before the board consulted and voted on Arbitrator Brown's draft opinion and award, there is no final and binding arbitration award that is subject to this Court's review or that can be enforced. Therefore, to the extent AFA's Complaint seeks enforcement of Arbitrator Brown's decision, it fails to state a claim upon which relief can be granted. Questions relevant to how the parties must proceed to resolve the domestic partner health benefits grievance under these circumstances are not properly before the Court.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss pursuant to Rule 12(b)(1) and/or 12(b)(6) is **GRANTED**.

Dated: May 2, 2013                             s/PATRICK J. DUGGAN
                                               UNITED STATES DISTRICT JUDGE

Copies to:
Deirdre Hamilton, Esq.
Marshall J. Widick, Esq.
Peter J. Petesch, Esq.
William B. Balke, Esq.